# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

|  |  |
|---|---|
| MCKENZIE LYONS, on behalf of herself and all others similarly situated, | **CV-21-121-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| CHIEF JEFF NEWTON, individually and in his official capacity as a Chief of the Great Falls Police Department, OFFICER TRAVIS PALMER, individually and in his capacity as an Officer of the Great Falls Police Department, CITY OF GREAT FALLS, MONTANA, by and through the City of Great Falls Police Department, and John Does 1-10, | |
| Defendants. | |

## INTRODUCTION

Defendants Chief Jeff Newton ("Newton"), the City of Great Falls ("the City"), and Officer Travis Palmer ("Palmer") (collectively, "Defendants"), have filed motions to dismiss Plaintiff McKenzie Lyons's ("Lyons") Amended Complaint (Doc. 21). (Docs. 30 & 43). The Court held a hearing on the matter on February 28, 2022. (Doc. 56). Lyons has filed a motion to convert Defendants' motions to dismiss to motions for summary judgment pursuant to Fed. R. Civ. P.

12(d) (Doc. 58) on April 30, 2022, following the Cascade County District Court's Order of Protection (Doc. 57-1). Lyons seeks to bind this Court to the Cascade County District Court's decision. The Court addresses, in turn, Lyons's motion to convert (Doc. 58) and Defendants' motions to dismiss (Docs. 30 & 43).

## BACKGROUND

Lyons served as an officer for the Great Falls Police Department ("GFPD"). (Doc. 21 at ¶ 1). Lyons began a relationship with Palmer around August 2020. *Id.* Lyons ended her relationship with Palmer in September of 2021 and began a relationship with another person who worked for the Great Falls Police Department. *Id.* at ¶¶ 80, 82. Lyons asserts that Palmer harassed her during and after their relationship. Lyons reported Palmer's conduct to the GFPD on October 6, 2021. *Id.* at ¶¶ 87-88. This report prompted an investigation by Chief Newton. GFPD terminated Lyons on November 9, 2021. *Id.* at ¶¶ 98-99. GFPD reprimanded Palmer, demoted him and placed him on leave without pay. (Doc. 31 at 11).

Lyons brings claims in her Amended Complaint against Defendants for violations of 42 U.S.C. § 1983, negligence and negligent supervision, and intentional or negligent infliction of emotional distress. (Doc. 21). Lyons also has asked this Court to provide her immediate injunctive relief for protection from any contact with Palmer. (Doc. 21 at ¶ 52; Doc. 2). The Court deferred ruling on

Lyons's Motion for Preliminary Injunction and Show Cause Hearing (Doc. 2) until after the Cascade County District Court conducted a show cause hearing. (Doc. 46).

The Cascade County District Court issued an Order of Protection (Doc. 57-1) on March 31, 2022, following the show cause hearing. The Cascade County District Court granted Lyons's request for permanent order of protection. *Id.* The order effectively rendered moot Lyons's Motion for Preliminary Injunction and Show Cause Hearing (Doc. 2) in this Court. (Doc. 60).

**LEGAL STANDARD**

**Motion to Convert to Summary Judgment**

Rule 12(d) allows a court to treat a Rule 12(b)(6) motion as a Rule 56 motion for summary judgment when "matters outside the pleadings are presented and not excluded by the court." Fed. R. Civ. P. 12(d). The rule also requires that the parties be given a "reasonable opportunity" to present all the material that proves "pertinent to the motion." *Id.* Converting a motion to dismiss into a motion for summary judgment lies within the discretion of a court. *Hernandez v. Levy Premium Foodservice, LP*, 2014 U.S. Dist. LEXIS 199879 (C.D. Cal. 2014).

**Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading

standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state

a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med.*

*Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based

on the lack of a cognizable legal theory or the absence of sufficient facts alleged

under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

699 (9th Cir. 1988).

The complaint must contain sufficient factual matter, accepted as true, to

state a claim for relief that is plausible on its face to survive a Rule 12(b)(6)

motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim remains

plausible on its face when "the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. The plausibility standard does not require probability, but

"asks for more than sheer possibility that defendant has acted unlawfully." *Id*

## ANALYSIS

## I.   Lyons's Motion to Convert Motion to Dismiss to Motion for Summary Judgment pursuant to Rule 12(d) (Doc. 58).

Lyons has presented the Court with the permanent order of protection

granted by the Cascade County District Court on March 31, 2022. (Doc. 57-1). The

order grants Lyons protection from Palmer for the remainder of this federal court

litigation. *Id.* at 8.  Lyons argues that this Court should convert the pending

motions to dismiss to motions for summary judgement by giving preclusive effect to the Cascade County District Court's ruling. (Doc. 59 at 3). Specifically, Lyons asks this Court to adopt several findings of fact and conclusions of law made by the Cascade County District Court. *Id.* at 4.

### a. Whether the Court is required to consider the Cascade County District Court order (Doc. 57-1).

A district court does not abuse its discretion under Rule 12(d) "when it does not consider matters requiring conversion." *Barnes v. Kris Henry, Inc*., No. 20-17141, 2022 U.S. App. LEXIS 4460, at \*2 (9th Cir. Feb. 18, 2022). A court need not convert a motion to dismiss into a motion for summary judgment if the court does not rely on the extraneous matter. *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 642 n. 4 (9th Cir. 1989). Generally, a district court should "consider only the pleadings" on a Rule 12(b)(6) motion. A court may decline to convert a motion where the extraneous materials stand "unnecessary" because a "non-moving party does not have to substantiate its allegations." *Barnes*, 2022 U.S. App. LEXIS 4460, at \*2 (citation omitted).

The motions to dismiss center exclusively on the legal sufficiency of the Amended Complaint (Doc. 21). The Cascade County District Court's Order, by contrast, addresses only the protective order. This extraneous information remains unnecessary to a determination of Defendants' motions to dismiss. The Court need not rely on or incorporate the Cascade County District Court's Order.

**b. Whether collateral estoppel applies.**

Federal courts must give the same preclusive effect to a state court judgement as another court of that state would give. *Bryant v. Wells Fargo*, 2017 U.S. Dist. LEXIS 206837 (E.D. Cal. 2017) (citation omitted). State court decisions shall have the same "full faith and credit in every court within the United States . . . by law or usage in the courts of such state . . . from which they are taken." 28 U.S.C. § 1738. For the Cascade County District Court's Order to have preclusive effect, however, it must satisfy the following elements of collateral estoppel: (1) "the identical issue raised was previously decided in a prior litigation;" (2) "a final judgment on the merits was issued in the prior adjudication;" (3) "the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication;" and (4) "the party against whom preclusion is now asserted was afforded a full and fair opportunity to litigate the issue." *Poplar Elem. Sch. Dist. No. 9 v. Froid Elem. Sch. Dist. No. 65*, 471 P.3d 57, 66 (Mont. 2020) (citation omitted).

For collateral estoppel to apply, the matter raised in the second suit must be "identical in all respects" to the issue decided in the first proceeding. *Planned Parenthood v. State*, 342 P.3d 684, 688 (Mont. 2015) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 599-600, 68 S. Ct. 715, 720, 92 L. Ed. 898 (1948). The "precise question" in the current proceeding must have been determined in the former

6

proceeding. *Poplar Elem. Sch. Dist. No. 9*, 471 P.3d at 66. Courts compare the pleadings and circumstances surrounding the two actions to determine whether the issues are identical. *Id.*

The Cascade Country District Court's Order (Doc. 57-1) granting Lyons protection against Palmer fails to embody the preclusive effect that Lyons claims. The Cascade County District Court's Order addresses the "sole issue" of "whether there is credible evidence that Lyons was the victim of stalking by Palmer." (Doc. 57-1 at 1). Nowhere in the order does the Cascade County District Court address the "precise question" of the legal sufficiency of Lyons's Amended Complaint (Doc. 21) that this Court now faces. *Poplar Elem. Sch. Dist. No. 9*, 471 P.3d at 66. Fundamental differences exist between the issues in a request for a permanent order of protection and the issues in a dissolution action. *Kimberly C. v. Anthony C.*, 182 A.3d 106, 111 (Conn. Ct. App. 2018). The parties have not yet litigated, and no court has determined, the legal sufficiency of Lyons's Amended Complaint (Doc. 21). The issue analyzed in the Cascade County District Court's Order fails to stand "identical in all respects" to the issues presented in the motions to dismiss in this Court. *Planned Parenthood*, 342 P.3d at 688 (citation omitted).

The Eastern District of California faced a similar issue in *Louen v. City of Fresno*, 1:04-CV-06556 OWW SMS (E.D. Cal. Aug. 8, 2007), 2007 U.S. Dist. LEXIS 59998. In *Louen*, a California Superior Court in Fresno County found that

an officer had been harassing the plaintiff and that the harassment had caused the plaintiff to suffer severe emotional distress. *Id.* at \*5. The California Superior Court issued a restraining order in favor of the plaintiff. *Id.* The plaintiff subsequently filed claims in federal court under § 1983 against the officer and his employer, the City of Fresno. *Id.* at \*2. The plaintiff moved for summary judgment on grounds of collateral estoppel the day after filing her complaint in federal court. *Id.* \*5. The plaintiff argued that the Eastern District of California should give preclusive effect to the judgment rendered by the California Superior Court. *Id.*

The Eastern District of California disagreed on many grounds. *Id.* at \*11-13. The court determined first that collateral estoppel did not apply as the issues in the state court proceeding differed from the issues presented to the Eastern District of California. *Id.* at \*11-13. The court reasoned that the plaintiff had failed to provide authority to show that the issues presented in the state court restraining order proceeding were "identical to the elements of claim under § 1983." *Id.* at \*12. The court further noted that the claims asserted in federal court had not been adjudicated in the California Superior Court action. *Id.* at \*11-13. Similarly, the burdens of proof between the two proceedings differed. *Id.* at \*12. The court then determined that the City of Fresno, as a non-party to the California Superior Court proceeding, had no opportunity to engage in a full and fair litigation on the issue. *Id.* at \*19.

8

*Louen* proves instructive here. The parties presented the Cascade County District Court with issues that differed from the issues that the Court now faces. The Cascade County District Court did not address the merits of Lyons's claim or the legal sufficiency of her Amended Complaint. Each court remains subject to different burdens of proof on the respective rulings. Accordingly, Lyons fails to provide any authority to show that the issues addressed in the Cascade County District Court's Order stand identical to her claims in this court. The issues in each proceeding remain distinct.

Furthermore, Newton and the City of Great Falls did not participate as parties in the protective order action in the Cascade County District Court. Palmer stands as the lone Defendant subject to the Order of Protection (Doc. 57-1). Newton and the City of Great Falls have not had a full and fair opportunity to litigate the order that Lyons seeks to assert against them. The Court denies Lyons's Motion to Convert (Doc. 58).

## II.    Defendants Newton and the City of Great Falls' Motion to Dismiss (Doc. 30) and Defendant Palmer's Motion to Dismiss (Doc. 43).

Palmer joins Newton and the City in their Motion to Dismiss (Doc. 30). (Doc. 44 at 3).

### a.  § 1983 claims (Count I)

Lyons asserts claims against Defendants under 42 U.S.C. § 1983 for violations of Lyons's constitutional rights to equal protection, due process, and

substantive due process. (Doc. 21 at ¶¶ 108-122). These claims stem from Lyons's termination from GFPD and GFPD's alleged failure to protect Lyons from domestic violence. *Id.* To sustain a claim under § 1983, a plaintiff must show the following: (1) that the "conduct complained of was committed by a person acting under color of state law;" and (2) that the "conduct deprived the plaintiff of a constitutional right." *Balistreri*, 901 F.2d at 699.

### i.   Whether Lyons states a claim under § 1983 against Palmer.

Lyons asserts in her Amended Complaint (Doc. 21) that all Defendants have violated her constitutional rights. *Id.* at ¶¶ 108-122. Lyons fails to allege, however, any specific conduct by Palmer that violated her constitutional rights. *See id.* The alleged constitutional violations instead directly arise from the conduct and decisions by Newton and GFPD's termination of Lyons and alleged failure to protect Lyons from Palmer. Lyons has included Palmer's name in the claims. Lyons has pled no factual allegations, however, that Palmer's conduct has denied her of her equal protection, due process, and substantive due process rights. *See id.* at ¶ 120. The Court dismisses Lyons's § 1983 claims against Palmer.

### ii.   Whether the Wrongful Discharge from Employment Act preempts Lyons's § 1983 claims against GFPD and Newton.

Newton and the City argue first that the Wrongful Discharge from Employment Act ("WDEA") preempts Lyons's termination claim due to Lyons's probationary employment status. (Doc. 31 at 13). Newton and the City assert that

Lyons has alleged no constitutional violation as Lyons presents no allegations that a similarly situated employee has been treated differently. *Id.* Specifically, Defendants note that Palmer served not as a probationary employee, but rather an officer protected under a Collective Bargaining Agreement. *Id.*

The WDEA provides the "exclusive remedy" for a wrongful discharge from employment in Montana. Mont. Code Ann. § 39-2-902. While on a probationary period of employment, the employer or employee may terminate employment "on notice to the other for any reason or no reason." Mont. Code Ann. § 39-2-902. No dispute exists that Lyons maintained a probationary employment status at the time the City terminated her employment. (Doc. 21 at ¶¶ 99). Lyons alleges no wrongful termination claims under the Montana WDEA. More importantly, Lyons's probationary employment status, in conjunction with the WDEA, deprive her of no federal constitutional rights.

State laws do not preempt federal laws. *See* U.S. Const. art. VI, cl. 2. Conduct while operating under color of state law that is wrongful under § 1983 "cannot be immunized by state law." *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). Lyons asserts claims under § 1983 that allege wrongful conduct under state law by Defendants. The Montana WDEA cannot preempt Lyons's federal § 1983 claims even if Lyons maintained a probationary status in her employment with

11

GFPD. To determine otherwise would undermine the Supremacy Clause. *See Martinez*, 444 U.S. at 284 n.8.

The WDEA also contains an exemption for federal claims surrounding wrongful termination. The WDEA does not apply to a discharge subject to any federal statute that "provides a procedure or remedy for contesting the dispute." Mont. Code Ann. § 39-2-912(1)(a). These statues include those that "prohibit discharge for filing complaints . . . or claims with administrative bodies" or that prohibit unlawful discrimination based on sex and "other similar grounds." *Id.* Defendants' preemption argument must fail as Lyons has asserted federal claims under § 1983 for the deprivation of Lyons's constitutional rights stemming from Lyons's termination from GFPD and GFPD's alleged failure to protect Lyons from domestic violence.

### iii. Whether Lyons can maintain due process claims against Newton and the City.

Newton and the City argue that the Court must dismiss Lyons's claims for procedural and substantive due process as Lyons retained no property interest in her employment at GFPD. (Doc. 21 at ¶¶ 115-122). The Fourteenth Amendment protects against the deprivation of life, liberty, or property. Amend. 14, U.S. Const.; *see also Brady v. Gebbie*, 859 F.2d 1543, 1547 (9th Cir. 1988), cert. denied, 489 U.S. 1100 (1989). Procedural due process claims "address the deprivation of property, including government employment." (Doc. 47 at 21); *See*

12

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Substantive due process claims, on the other hand, address deprivation of liberty. *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Lyons clarifies in her response brief that Defendants have mischaracterized her due process claims as one of deprivation of property – specifically her government employment. (Doc. 47 at 23). She notes that the § 1983 violation occurred during her employment at GFPD, but "it does not transform it into a case involving a protected property interest." *Id.* Lyons is the "master of [her] complaint." *Avitts v. Amoco Production Co.*, 53 F.3d 690, 693 (5th Cir. 1995). By her own concession, Lyons acknowledges that her Amended Complaint contains no procedural due process claim. (Doc. 21). The Court instead will analyze Lyons's due process claims from alleged deprivations of Lyons's liberty as substantive due process claims.

The Due Process Clause contains no language that requires the state to protect the liberty of citizens "against invasion by private actors." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195 (1989). Historically, the Clause prevents the state from depriving individuals of their liberty, but its language fails to extend to "impose an affirmative obligation on the state to ensure that those interests to not come to harm through other means." *Id.* In other words, the Due Process Clause contains no general duty for state officials to

13

protect members of the public at large from crimes. *See Balistreri*, 901 F.2d at 699-700.

An exception to this rule exists, however, where a special relationship exists between the state and the victim or the criminal and the victim that "distinguishes the victim from the general public." *Ketchum v. Cnty. of Alameda*, 811 F.2d 1243, 1247 (9th Cir. 1987) (citations omitted). Courts look to the following factors to determine whether a special relationship exists: (1) "whether the state created or assumed a custodial relationship toward the plaintiff;" (2) "whether the state affirmatively placed the plaintiff in a position of danger;" (3) "whether the state was aware of a specific risk of harm to the plaintiff;" or (4) "whether the state affirmatively committed itself to the protection of the plaintiff." *Balistreri*, 901 F.2d at 700.

Lyons asserts that she maintains a special relationship with GFPD by her status as a victim of domestic violence. (Doc. 21 at ¶¶ 115-118). Lyons alleges that she reported Palmer's criminal activity, that she was punished for doing so, that Newton and GFPD "condoned and ratified" the criminal conduct by firing her, and that Newton and GFPD failed to protect her. *Id.* at ¶ 116. Newton and the City argue that Lyons's reliance on the mere fact that she made a report to GFPD fails to establish a special relationship. (Doc. 52 at 13). They point to *DeShaney* to support their position.

The U.S. Supreme Court in *DeShaney* faced the question of whether a special relationship existed when the state failed to protect a young boy from his father's abuse after the abuse had been reported to state social workers. 489 U.S. at 195, 197. Petitioners argued that a special relationship existed as the state knew of the danger faced by the boy and that the state proclaimed its intent to protect him. *Id.* The U.S. Supreme Court determined that no special relationship existed between the boy and the state. *Id.* at 198. The U.S. Supreme Court reasoned that in the substantive due process analysis, the "State's affirmative act of restraining the individual's freedom to act on his own behalf" triggers the Due Process Clause for deprivation of liberty, not its failure "to act to protect his liberty interests against harms inflicted by other means." *Id.* at 200. No due process violation occurred as the state had no duty to provide members of the public with adequate protective services. *Id.* at 189.

The circumstances surrounding the reporting and parties in this case differ significantly. Unlike the boy in *DeShaney* who had no connection to the state other than a report of abuse, all parties here were affiliated with the City. This case provides a unique circumstance in which Palmer and Lyons both were employed by GFPD at the time of the alleged events. (Doc. 21 at ¶ 1). Lyons complained to Newton and GFPD, her employers, about Palmer's conduct.  Similarly, Palmer was not some random stranger or any random member of the public. Once Lyons

reported Palmer's conduct, the assertion that Lyons maintained a special relationship with GFPD remains at least plausible given the status of reporting and positions of employment within GFPD.

Furthermore, both Palmer and Lyons continued to work for GFPD after Lyons had reported him. Lyons claims that the harassment continued during this post-reporting period. Specifically, Lyons alleges that Palmer continued to stalk her using resources of GFPD, including when he slowly drove by Lyons while she was conducting a traffic stop on October 25, 2021. *Id.* at ¶¶ 23-25. Lyons admittedly includes conclusory statements in her Amended Complaint (Doc. 21). Lyons also provides numerous factual allegations to support her claims to establish that GFPD created a custodial relationship with her, placed her in a position of danger, knew of the specific risk of harm that Lyons faced from Palmer, and affirmatively committed itself to her protection once she had reported. *Balistreri*, 901 F.2d at 700. Lyons's due process claims against Newton and the City remain plausible.

### iv. Whether Lyons can maintain equal protection claims against Newton and the City.

Newton and the City assert that Lyons has failed to allege facts showing that Defendants have "acted with an intent or purpose to discriminate" against Lyons based on her "membership in a protected class." (Doc. 52 at 8); *Hageman v. Bates*, No. CV-06-09-MDWM, CV-06-45-MDWM, 2007 WL 927584, *10 (D.Mont.

16

Mar. 23, 2007). Within this analysis, Newton and the City argue that Lyons cannot maintain her equal protection claims as she fails to allege that she was treated differently than similarly situated individuals. (Doc. 31 at 16). These requirements normally serve as general gatekeepers for equal protection claims. The Ninth Circuit has taken a special approach when involving victims of domestic violence. *See Balistreri*, 901 F.2d at 701.

In *Balestreri*, a domestic violence victim had been physically beaten by her husband. *Id.* at 698. Following the couple's eventual divorce, the ex-husband continued to harass the woman. *Id.* The ex-husband subjected the woman to multiple incidents from 1982 to 1985, including vandalism and hundreds of phone calls. *Id.* After three years of filing police reports and no action taken by the police, the woman filed § 1983 claims for violations of equal protection and due process against the police chief and department for failing to protect her. *Id.* at 698-99. In determining that the district court had abused its discretion when it refused the woman's request to amend her complaint and further dismissed her claim for equal protection, the Ninth Circuit noted that "several district court decisions [] have held that police failure to respond to complaints lodged by women in domestic violence cases may violate equal protection." *Id.* at 701. The Ninth Circuit allowed the woman to amend her complaint as it found that the facts before it established an equal protection claim.

The case proves similar here. Lyons has alleged that she maintains a status as a victim of domestic violence. Lyons's claim for equal protection, as recognized by Lyons in her response, has nothing to do with her employment or her relationship with Palmer. (Doc. 47 at 25). To the contrary, Lyons's equal protection claim relates to her classification as a victim of domestic violence and the punishment that she allegedly received from GFPD for that classification. Lyons has alleged facts "indicating that as a woman, she was discriminated against when seeking protection from a known danger, her ex-[partner]." *Balistreri*, 901 F.2d at 701. Accordingly, Lyons's claim for equal protection, as a victim of domestic violence, remains plausible.

> **v.   Whether Lyons can maintain failure to protect claims against Newton and the City.**

The City and Newton assert that Lyons cannot sustain her failure to protect claim as all harms Lyons allegedly suffered from Palmer's actions occurred before her report had been filed on October 6, 2021. (Doc. 31 at 17). Lyons has pled, however, what she characterizes as an instance of stalking on October 22, 2021, in which Palmer drove past Lyons while she was conducting a traffic stop. (Doc. 21 at ¶ 23). Notably, Lyons asserts in her Amended Complaint that Palmer's knowledge of Lyons's location "showed that Palmer was using the resources available to him as an officer of the GFPD to stalk her." *Id.* Regardless of whether Palmer self-reported this incident to his supervisor, the drive-by followed Lyons's

initial October 6, 2021 report while Palmer was allegedly using GFPD resources. This scenario created a "dangerous situation" that understandably created risk and "shook Lyons to the core" *Id.*

Again, the City and Newton argue that Lyons's failure to warn claim must fail as the state generally has no duty to protect individuals from harm by third parties. (Doc. 31 at 18); *see DeShaney*, 489 U.S. at 195. The Court already has determined that Palmer exceeds any "third party" classification given the relationship with Lyons as co-workers at GFPD and Lyons's report of Palmer's alleged misconduct. The relationships between the police departments and victims from the general public in *Balistreri* and *DeShaney* differ significantly from the close relationships between GFPD, Palmer, and Lyons in this case.

### b. Negligence and negligent supervision claims (Count II)

Like the § 1983 claims against Palmer, Lyons presents allegations in Count II that relate to the conduct and decisions only of Newton and GFPD. Lyons alleges that Newton and GFPD breached various duties in her Amended Complaint. (Doc. 21 at ¶¶ 124-33). These breaches center around Newton and GFPD's conduct following Lyons's report of Palmer's alleged abuse. Nowhere does Lyons allege that Palmer ever breached a duty. The Court dismisses Lyons's negligence and negligent supervision claims against Palmer.

19

Newton and the City argue that they owed no duty to Lyons as no special relationship existed. Similar to the due process claims, Lyons's negligence claims against Newton and the City require a special relationship to impose a duty outside the public duty doctrine. A police officer has "no duty to protect a particular person absent a special relationship" as the officer owes a duty to the public at large and not individual persons. *Gonzales v. City of Bozeman*, 217 P.3d 487, 491 (Mont. 2009). The Court already has determined that a special relationship remains plausible in this case. Lyons's negligence and negligent supervision claims against Newton and the City survive a motion to dismiss.

### c.  Injunctive relief (Count X)

Lyons has asked this court for a preliminary injunction restraining Newton and GFPD from causing future harm as it relates to Palmer, and a temporary restraining order and preliminary injunction against Newton and GFPD to limit Palmer's employment and access to resources. (Doc. 21 at ¶¶ 154-55). Lyons also has filed a Motion for Temporary Restraining Order and Preliminary Injunction and Show Cause Hearing (Doc. 2). The Cascade Country District Court entered an order granting a permanent order of protection, restraining Palmer from stalking or coming within 500 feet of Lyons. (Doc. 57-1 at 8). The Cascade County District Court's Order rendered moot Lyons's motion for injunctive relief (Doc. 2). (Doc.

60). The Court dismisses as moot Lyons's claims for injunctive relief as they relate to protection from Palmer.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Lyons's Motion to Convert Motion to Dismiss to Motion for Summary Judgment (Doc. 58) is **DENIED**.

2. Newton and the City's Motion to Dismiss (Doc. 30) is **DENIED**.

3. Palmer's Motion to Dismiss (Doc. 43) is **GRANTED IN PART**, and **DENIED IN PART**.

   a. Lyons's § 1983 claims (Count I) against Palmer are **DISMISSED**.

   b. Lyons's negligence and negligent supervision claims (Count II) against Palmer are **DISMISSED**.

   c. Lyons's injunctive relief claims (Count X) for protection from Palmer are **DISMISSED**.

Dated the 14th day of July, 2022.

Brian Morris, Chief District Judge
United States District Court